When it comes to particularly serious crime determinations and applications for relief under the Convention Against Torture, this Court, the Board of Immigration Appeals, and the Code of Federal Regulations provide clear-cut legal frameworks and bright-line evidentiary rules that the agency must adhere to. The question before this Court is not whether the facts render the case, or the Convention particularly serious, it's whether the agency was correct to rest its facts and circumstances determination on the facts that derived from the I-213, which were an ICE officer's summary of a police officer's statement and a law enforcement document describing the incident. This Court has recently applied those standards to hold that a document, like the one here, which compiles impressions and statements of a person who might not otherwise be available to testify, cannot be admitted, absent very specific procedural safeguards. The kind of information that's recounted here is like very specific case numbers and dates, and it looks very much like whoever completed the I-213 was copying stuff off of a computer printout, a rap sheet, or something of that nature. Doesn't the very nature of the document on its face suggest the minimum level of reliability? No, Your Honor. Under Alcarez-Enriquez, again, this document and the information contained therein, as it relates to what the ICE officer summarized from the police officer's probable cause declaration describing incidents that occurred, that information must be subject to DHS's obligation to make affirmative efforts to produce the witness for examination. Alcarez-Enriquez is very clear on this. And Alcarez-Enriquez requires remand for the agency to subject this document to those safeguards. Does the record indicate why the traditional criminal records that we normally see in these cases are not here? Your Honor, they just weren't introduced into the record. Did you at any point suggest that any of this information was untrue? Your Honor, the question isn't about conflict between evidence, it's whether... My question is, did you at any point suggest that the information was untrue? Mr. Hernandez testified to facts that did not go as far as these ones. He did not testify to using a knife, to stabbing the victim, to causing a laceration to his head. Did he say that he didn't? He said that he used a skateboard and he said that there was force used by both parties and that both parties suffered injuries. Okay, but that, I mean, let me try once more. I understand that you made an argument that it was improper to rely on the I-213. Did you say that, you know, we don't just have a legal objection to relying on the I-213. We think the I-213 is wrong. Your Honor, the objection that was raised was that the I-213 and the information for which it was being introduced was unreliable. It was hearsay. There was no opportunity to cross-examine. So no, Your Honor, it wasn't about that this information was wrong. That wasn't the objection that was raised. It was that the information that was coming in should not come in under these fundamental due process principles and that the rules that do govern the admission of evidence... Your objection was, you made an evidentiary objection. This evidence should not be admitted. But you did not make an argument that what the evidence purported to say was untrue. The argument that was made below was that that's not what Mr. Hernandez has testified to. It's not, he's not saying that his testimony was in conflict. Again, he testified that he used a skateboard, which is, of course... Well, you could use both. And you could also base an ADW charge on a skateboard. I'm trying to find out whether this is purely an evidentiary objection issue for us to resolve or whether we should be looking at whether there was substantial evidence on the record as a whole that Hernandez did indeed assault somebody with a dangerous or deadly weapon. Your Honor, it's a purely evidentiary and legal issue. And again, Alparez Enriquez is very clear on this point. When you say purely evidentiary and legal, I assume you're trying to say both, rather than one or the other. But it's hard to tell because your answer isn't exactly responsive. Yes, Your Honor. So it's both an evidentiary issue in that it's not reliable evidence under Alparez Enriquez. And it's also a legal issue because Alparez Enriquez also says that it's a violation of the United States Code and DHS's obligation to produce the witness, as well as basic due process principles about the right to cross-examine witnesses that are produced against you. Well, obviously, we put it to a process violation requiring there has to be prejudice, right? And so in the absence of any suggestion that the information was incorrect, I'm having trouble seeing what the prejudice is from letting it in. Your Honor, Alparez Enriquez, again, is very clear on this point that prejudice lies where the agency rests its decision, at least in part, on the aggravating facts that came in through the evidence that should have never been admitted. And again, that's what we have here. Both the IJ and the board rest their decision, their negative facts and circumstances decision, on evidence that came from the I-213. Did you just say that whenever there's an error by a trial judge letting in evidence that should have been excluded, the prejudice flows from that legal error, regardless of whether the factual conclusion would have been any different? Your Honor, the prejudice follows from the agency relying on the evidence that should not have been admitted in those circumstances. Your Honors, I see that my time is running low, and if the Court has no additional questions, I would like to move on to Kat. The agency in adjudicating an application for relief under the Convention Against Torture must consider all properly raised arguments and all evidence relevant to an applicant's fear of future torture. And Mr. Hernandez has detailed each of the discrete errors that underlie each of the findings within the agency's opinion below. I would like to focus on a few here, and that's the agency's treatment of Mr. Hernandez's LGBTQ-based past and future torture and his past and future torture by police. So turning to the LGBTQ-based torture claim and looking at the agency's government acquiescence finding, this is hallmark evidence of the agency's failure to consider all relevant evidence. As to the past torture finding, the agency provides a summary one sentence, no government acquiescence, after finding, yes, he had been raped in rapist torture. And that single stand-alone sentence with no evidence cited and no case law cited is not enough to make the... Mr. Hernandez, I recall that on one of these occasions, he said he was raped, but he didn't tell the police. He said that, Your Honor, is absolutely correct. He did not tell the police because he testified that the police don't care. And what's incredibly important here is that Dr. Barnes provided expert declaration, expert country conditions opinion that was never referenced in any of agency opinions, but said that LGBTQ individuals do not report because they do not expect the police to protect them because the police do not protect them. And the police are, in fact, 33% of the time, the perpetrators of the torture, the murder, the violence, all of it. And so it was the agency's obligation to both identify that evidence, engage with that evidence, which, again, was an expert opinion that this court has repeatedly held the agency is not free to disregard, especially silently. And it's failure to do that here, to engage with the evidence here. What exactly did Hernandez say was his reason for not telling the police about the rape in the van? He testified that, and, Your Honor, I have it somewhere, but he said, I do not report it. I have it right in front of you with a yellow sticky on it, an underline. It's in the binder, but for the sake of time. Please tell us. Yeah, he said that he did not report because that type of information or that type of report, they don't care about it in Mexico. They don't care about it there. They don't do anything there. And his repeated instances of being raped with nothing happening, that is evidence of government acquiescence, especially, again, when you look at the country conditions evidence that speaks directly to this point. And then turning to the agency's negative government acquiescence finding. I think what he said, actually, was he said the cops were good for something at that time. They did their job. Your Honor, that was to the one attempted gang rape that he suffered where an officer approached him or arrived at the scene with Giovanni's pants tied behind his back, him on the floor, his pants pulled down, his perpetrator surrounding him. And at that point, the officer arrested Giovanni in addition to his perpetrators, put them in a jail cell together where the perpetrators continued to harass him, berate him, take photographs of him. And then they released the perpetrators. I think this is the occasion where he says the cops were good for something at that time and they did their job. It was that incident, I think, wasn't it? It was that particular incident, yes, Your Honor, is correct. But when it came to Giovanni- Giovanni doesn't say the cops wouldn't have done anything because I'm gay. Oh, Your Honor- He says the cops did their job. Your Honor- Did their job. In that one particular incident, that was Mr. Hernandez's testimony. But again, what's important, what the agency- But that's the incident where you're trying to say he wasn't protected. Your Honor, that's one incident of his overall exposure to torture while in Mexico. His repeated instances of rape, he testified unequivocally in unrefuted testimony that he was repeatedly raped. He said there were two other rapes, one in Tijuana, one in Acapulco. He was drunk in both incidents and did not report either to the police. He doesn't say that the reason he didn't report the incidents was that the police would have been as bad as the criminals who raped him or that the police wouldn't have done anything. The one time when he talks about that issue, he says the cops did their job. Your Honor, when I come back on rebuttal, I will provide Your Honor with a direct AR site to that testimony that he provides. I do see that I only have two and a half minutes left, if I may reserve that. Okay, we'll make sure that you get enough time for rebuttal. But I have one more question, which is going back to the I-213 question. So in Alcara's Enriquez, Alcara's actually testified and specifically said that the, I think it was a probation report there, was incorrect. And what we said was, if the probation report had been found to be unreliable, it's possible the IJ could have found Alcara's credible and based on Alcara's version of events, found that his conviction was not for a particular serious crime. So I interested you earlier to be suggesting that the case stands for the proposition that there's sort of a per se rule of prejudice when you let in evidence that you shouldn't. But it seems quite different because there, it really did controvert the evidence that was let in in a way that you haven't. So I'll just ask again, what's the case for prejudice here? Your Honor, prejudice, it's not a per se prejudice that follows. It's the prejudice that follows when the agency relies on the aggravating factors in making its determination. And that's what we have here. And the I-213, that's the only source of this, you know, the victim, the stabbing, the knife, the laceration. And if the agency had found that evidence to be unreliable, then it would have had Giovanni's testimony and its outcome could have been different. And it's not about actually what would have happened, it's simply that the agency relied on the evidence that was not subjected to the safeguard that it had to have been subjected to. Thank you. We'll give you three minutes. Thank you, Your Honor. Leslie. Good morning, Your Honors. May it please the Court, Son of Lee, representing the Attorney General. Your Honors, the agency in this case did not use its discretion in finding that particularly serious crime. The major... Why didn't they get the, doesn't the DHS normally get the criminal history records, the standard ones, and put those in? Was that not done here? Your Honor, I don't know exactly what the reason was for that not being in the record. But in this case, the petitioner was, it was his burden to show that he was eligible for the protection and relief that he was seeking. So, the removability charge, he conceded. And it was his burden to show that he was eligible for relief. So, in this case, he should have provided evidence that his conviction did not constitute a particularly serious crime, which rendered him ineligible for asylum, withholding of removal, and under the CAT and under the INA. And in this case... Your answer is they're not in the record, but it's his fault. Well, regarding his burden to show that he's eligible for relief, it was, he didn't meet his burden of showing that this bar to relief didn't apply to him. And he didn't provide a police report or the records related to his conviction. And so, what we have here is his own testimony. We have, he doesn't contest that he was convicted of assault with a deadly weapon. That's not at issue here. So, that's what we have in this case is that we have a conviction for assault with a deadly weapon, which has been determined to be a crime of violence by this court. And we also have the nature of that conviction, which involves harm against a person. And that's definitely supports the government's case that this crime was particularly serious because there's an inherent danger involved in that crime. We also have the facts surrounding the crime. And we have his testimony. His own testimony was that he was very intoxicated and he got in a fight with his friend. And he used force against his friend who got hurt as a result of that fight. And he never, according to his counsel, he testified that he used a skateboard. He never testified that that was the case. He never said that. He only said that he got in a fight and that he used force. And that he got hurt and his friend got hurt. So, that testimony also supports the fact that this was a dangerous crime and that he assaulted his friend with a deadly weapon. He hasn't produced any evidence to contradict the evidence that was in the I-213. But his own testimony supports the particularly serious crime determination in this case. And he doesn't say that he did not stab the victim. There's no evidence that contradicts the evidence in the I-213. So, on top of the. Could you address, before you move on, the petitioner's argument based on Alvarez-Enriquez? How do you distinguish that case? Yes, Your Honor. Well, in this case, as you pointed out, Alvarez doesn't apply because he does not contest the facts that were in the I-213. And Alvarez-Enriquez, the petitioner in that case, claimed that the evidence that was given in the probation report was different than his own version of what happened. So, I mean, I guess that goes to prejudice. But is it your view that there was an error but it wasn't prejudicial? Because I thought your view was there's no error at all. And so, how do you reconcile that part of your position with Alvarez-Enriquez? Yes, Your Honor, we. The government believes that it was not erroneous to rely on this I-213 because in this case, there's also the government official's version observations, which is the police officer's observation of a laceration on the victim's head. And so, it's not only the witness's testimony that's in that I-213. It also contains a government official's observations, which does support the finding that this crime was particularly serious. So, the police officer stated in a probable cause declaration that he saw the laceration on the victim's head. And he also observed that the witness pointed out that the petitioner, Mr. Hernandez, was the perpetrator of that crime. And so, the police officer indicated that the witness pointed him out in a lineup, pointed out Mr. Hernandez in a lineup as the person who attempted to stab him with a knife. On that point, at least, I don't see the distinction from Alvarez-Enriquez because there was a probation officer who was a government official. But we said he was relating what he had been told by the witnesses. And he said that was not okay. And so, the police officer's first-hand observations, the lacerations maybe is one thing. But the police officer saying, and a witness told me that it was Hernandez who did it, seems very similar to what we condemned in Alvarez-Enriquez. So, what's the difference? Well, Your Honor, we, yes, I'm not sure there is much difference in that aspect of it. But the one difference would be that the probable cause declaration is not the same as a probation report. Well, but in this case, we do stress the fact that there is the government official's own version of his observations in this crime. And also, going to the prejudice, the petitioner, Mr. Hernandez, does not contest the facts that are in that I-213. And he does not provide a different version of events. He doesn't say that he didn't stab the victim. He has never stated that. So, what you're saying is the distinction between the Alvarez case and this one is that in Alvarez, he said he didn't do what the probation report said he did. And in this case, he didn't say that he didn't do what the police report. Yes. Related by the officer said he did. Yes, Your Honor, I think that's a major distinction. He never, in Alvarez, that petitioner disagreed with what was in the probation report. And in this case, excuse me. The probation report said he tied his girlfriend or wife to the bed and raped her. And he said, I didn't do that. Right, Your Honor. Right. And so, a major distinction here is that Mr. Hernandez has never stated that he didn't stab the victim. He's never stated that. And he also, his testimony is consistent with the I-213. And so, his own testimony supports what's in that document. And even without the I-213, you have his testimony alone, which supports the government's finding. Well, your opposing counsel said that his version was that the weapon was a skateboard. He never testified to that, Your Honor. I mean, it's in his statement that it was a skateboard, his written statement. Yes, Your Honor. But he hasn't presented that version of facts as a reason to excuse me. We heard it this morning from your opposing counsel. Yes, Your Honor. Well, yeah, they're raising it now in the oral argument for the first time. But his own testimony, which I think is, gives more support to, there should be more focus on his own testimony. Because he did have a chance to testify about what happened. He wanted to give that testimony, and he was able to do so. He had a chance to say, well, the I-213 is wrong. And he did not do that. He said he used force against his friend. He said he was very intoxicated. And he said that his friend got hurt. So I-213, in this case, is reliable. He has not presented any evidence to show that it's not unreliable, that it's not reliable, or any reason to show that it's not reliable. He just does not want the court to consider it. But even if this case were to be remanded for that reason, the result would probably be the same, Your Honor. He hasn't given an alternate version of the incident, or any reason why to show that there's anything wrong with the I-213. And as I was saying earlier, even without the I-213 in this case, we have an uncontested fact of conviction for assault with a deadly weapon. We have his own testimony. Alone. And so these, we have the nature of the conviction. So these things all support the agency's determination that he was convicted of a particularly serious crime. And Your Honors, as far as his application for a CAT is concerned, he has not shown that the record compels the conclusion that he is eligible for CAT protection. The rapes and sexual assault that he suffered were not by government actors. And he also never reported any of those rapes. So we don't have a government acquiescence in this case for those incidents. And as far as the incident and the man is concerned, there's no evidence that he, that the police acquiesced to any sort of sexual assault. And as Your Honors noted earlier, Mr. Hernandez himself testified that the police helped him in that case. He said, wow, they did their job in that situation. And so there's no evidence here that the police acquiesced to any sort of sexual assault or attempted sexual assault. And he said exactly about the use of the knife in the ADW. I know he says he used a skateboard. And he doesn't say, I did not assault the other individual. But does he ever say, no, I did not use a knife. I only used a skateboard. Or what does he say about the knife? He never said that he did not use a knife, Your Honor. Yes, and so yes, to your point, he said he used a skateboard in a declaration. And that also supports the government's determination that this is a particularly serious crime. And I see that my time has run out. So unless Your Honors have any further questions, I will thank you. Thank you. Thank you, everybody. Ms. Comstock. Okay, so again, I just want to reiterate that the question is not whether this court, in looking at the entire evidentiary record, would find that this was a particularly serious crime. The question is whether the agency applied Francesco and the government has made clear in their argument and in their briefing that it did not consider the 248 sentence imposed. And then two, whether it made its fact and circumstances negative finding based off of evidence that it could consider. And again, it did not occur as Enriquez plainly governs here. It is incumbent on the agency to make a case-by-case PSC determination. Flores Vega makes that clear. A whole line of authority makes that clear. And so we cannot just rely on the fact that it was an assault, a deadly weapon, or a kind of harrassment. I don't understand the word plainly. You said Alcarez-Enriquez plainly governs. Alcarez-Enriquez, he says, yeah, I punched her, but I did not tie her to the bed and rape her. Here, he doesn't say that I did not attempt to stab my friend with a knife, and I did not commit an ADW. As described. Again, Alcarez-Enriquez does not churn on a conflict between the evidence. It churns on whether the evidence is being used against the respondent where it compiles impressions and testimonies that are not, of persons who are not made available for examination, whether that was appropriate, and whether the appropriate safeguards were applied. And here, the question is whether he presented a sufficient factual basis to raise an issue. If he doesn't even contest affirmatively at any point that he did not use a knife, it doesn't seem, absent anything else, that there is a reason to question the reliability of the document. Your Honor, he objected to the admission of the document for the exact same reasons that Alcarez-Enriquez said admission of the document there. Did he ever say at any point in the record, and I've been going through, and there actually are a fair number of criminal records in here, but not this particular probable cause report. Did he ever at any point in the record say, I did not use a knife? No, Your Honor. He said that, as Your Honor noted in his declaration, he said that there was a skateboard that was... Well, he said he used a skateboard, not say he didn't use a knife. I mean, he could have used both a skateboard and then a knife. Your Honor is correct, but that also calls for a weighing of the evidence in a way that the IJ and the board did not undertake, and so that too would require this court to then go in and re-weigh the evidence. And again, that's not the question. The question is whether Alcarez-Enriquez requires remand on this record, and it does. I want to move to Kat in my 10 seconds that I have left. And as promised, on AR 235, that's where his... Under Alcarez, you think, basically, the hearsay rule is revived for immigration cases, because even if the government's proof is not contradicted by evidence, nevertheless, the government must produce live witnesses. No, Your Honor. Alcarez is very clear on this point that it does not rest only on a hearsay objection. It rests on the intersection between the all-reliable evidence standard and the fundamental fairness standard. And again, also, the United States Code and DHS's obligation... I think you're saying... You're trying to turn this into an abstract question of admissibility of evidence, and I think you're saying it's always a violation of due process, and the evidence is always unreliable if the government doesn't present live testimony for that evidence. Your Honor, Alcarez-Enriquez, it says, if the evidence submitted compiles impressions and testimonies of persons who are not otherwise available to testify, that that kind of finds itself at the intersection of the all-reliable evidence standard and the fundamental fairness standard. And whereas here, the agency relies on that evidence, and the respondent was not given an opportunity to examine the person who made those statements, prejudice lies. Legal error has occurred, and prejudice lies. Counsel, you were going to give a citation on the... Yes, Your Honor. At AR-235, his immigration attorney said, why didn't you tell the police about the rapes? And Mr. Hernandez replies, you know, it's nothing. It's not a big issue over there. And again, I would remind the court that it was the agency's obligation to consider that testimony as well as Dr. Barnes's expert opinion, which, again, is nowhere in any agency opinion. And Dr. Barnes said, typically, hate crimes are left uninvestigated or are dismissed as crimes of passion when the victim is transgender. AR-559, again, AR-559, because of their marginal status, sexual minorities become particular targets of public, the police and military, and private security forces. Again, 559, sexual minorities do not assume. The police or judicial system are going to protect their rights if they are attacked or brutalized often. 33% of those cases are those, the police are the ones who are attacking them. Police and military officers are the ones committing the attacks themselves. And that derives from a culture where social cleansing of LGBTQ individuals is prioritized and it's furthered. And the agency did not consider this expert declaration in any portion of its CAT analysis at all. And that is very plain legal error under Castillo and a broad line of authority. Thank you, counsel. Thank you, Your Honors. Ms. Comstock, you're representing a petitioner by appointment of the court pro bono, and we appreciate your service. Thank you. Yes, thank you very much. We thank both counsel for their helpful arguments this morning on the case of Smith.
judges: KLEINFELD, MILLER, COLLINS